**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 22-CR-96 (CKK)** |
| | : | |
| **LAUREN HANDY,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OPPOSITION DEFENDANTS'**
**MOTIONS FOR JUDGMENT OF ACQUITAL**

The United States, hereby, opposes defendants' motions, pursuant to Fed. R. Crim. P. 29, for judgment of acquittal.[1]

**I.     Defendants' Motions for Judgment of Acquittal should be denied.**

The defendants' motions for judgment of acquittal must fail.    Their words – and even more importantly their deeds – establish that they conspired against rights, as charged in Count One of the Superseding Indictment.    Likewise, the evidence that each defendant obstructed access to reproductive health care through force and physical obstruction, as charged in Count Two, is overwhelming.    Moreover, each defendant is also vicariously guilty of Count Two pursuant to both coconspirator and aiding and abetting liability.    At bottom, the evidence of the defendants' guilt is far more than sufficient to sustain the jury's verdicts.

---

[1]     Defendants Handy, Hinshaw, Geraghty, and Goodman filed a consolidated motion.   ECF # 455 ("Handy Mot.").   Defendants Hinshaw, Geraghty, and Goodman also filed supplemental motions, ECF #s 454, 452, and 456, respectively.   And Defendant Idoni filed a separate motion. ECF # 415 ("Idoni Mot.").

## II.        Procedural Posture

On October 14, 2022, the grand jury returned a two-count superseding indictment, charging the defendants with violating 18 U.S.C. § 241 (conspiracy against rights) and 18 U.S.C. § 248(a)(1) (clinic access obstruction).    These charges stemmed from the defendants' scheme to obstruct access to a women's reproductive health clinic (the "Clinic") located in the District of Columbia, and their blockade of that facility on October 22, 2020.    After a jury trial, on August 29, 2023, each defendant was found guilty of both charges.    ECF # 413.[2]    The jury also determined that each defendant had committed clinic access obstruction by both force and physical obstruction. *Id*.

## III.       Standard for Judgment of Acquittal

"After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."    Fed. R. Crim. P. 29 (a) and (c) (defendants may move for a judgment of acquittal . . . after a guilty verdict").    When adjudicating a motion for judgment of acquittal, the Court must "determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"    *United States v. Sitzmann*, 893 F.3d 811, 821 (D.C. Cir. 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).    "This high degree of deference we afford to a jury verdict is *especially important when reviewing a conviction of conspiracy*. This is so because a conspiracy by its very nature is a secretive operation, and it is a rare case

---

[2]        At the close of the government's case, on August 21, 2023, the defendants moved for judgments of acquittal, which the Court took under advisement.    Trial Transcript ("Trans"), 8/21/23 p.m., at 24.

where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (emphasis added) (citation and internal quotation marks omitted).

**IV.     There is more than sufficient evidence to sustain the jury's verdict on Count One.**

The defendants were convicted of Count One of the indictment, in which they were charged with Conspiracy Against Rights, in violation of 18 U.S.C. § 241. That offense comprises three elements:   (1) two or more persons agreed to injure, oppress, threaten, or intimidate the patients or employes of the Washington Surgi-Clinic; (2) the defendant joined the agreement; and (3) the defendant intended to hinder, interfere with, or prevent the receipt or delivery of reproductive health care.   FINAL JURY INSTRUCTIONS, ECF # 445, at 34-35.

To prove a conspiracy, the government must establish the existence of an agreement to do an unlawful act between or among two or more persons, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017), and that the defendant knowingly and willfully joined the agreement.   *Smith v. United States*, 568 U.S. 106, 110 (2013).   The existence of the agreement may be "'inferred from the facts and circumstances of the case.'"   *Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975); *see also United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (same); *see, e.g.*, *United States v. Matthews*, 31 F.4th 436, 448 (6th Cir. 2022) (emphasis added) ("the government was not required *to produce a smoking gun*.").

"Once the government presents evidence of a conspiracy, it only needs to produce slight evidence to connect an individual to the conspiracy.'"   *United States v. Shows Urquidi*, 71 F.4th 357, 376 (5th Cir. 2023); *see also United States v. Tennison*, 13 F.4th 1049, 1059 (10th Cir. 2021) ("'a defendant's participation in the conspiracy may be slight'").   Moreover, the government need not prove that each conspirator agreed to all the details of the plan.   *See, e.g., United States v.*

*Gatling*, 96 F.3d 1511, 1518 (D.C. Cir. 1996).   And "the evidence 'need not exclude every reasonable hypothesis except guilt.'"   *United States v. Bailey*, 54 F.4th 1037, 1040 (8th Cir. 2022).

The existence of a conspiracy may be proved by the defendants' concerted action. *Hamling v. United States*, 418 U.S. 87, 124 (1974); *see also United States v. Raymundi-Hernandez*, 984 F.3d 127, 139 (1st Cir. 2020) (conspiracy may be proven by "'the interdependence of activities and persons involved,'"); *United States v. Sanders*, 952 F.3d 263, 274 (5th Cir. 2020) (existence of conspiracy "can 'be inferred from concert of action.'"); U*nited States v. Weiner*, 3 F.3d 17, 21 (1st Cir. 1993) ("An agreement may 'be implicit in the working relationship between the parties that has never been articulated but nevertheless amount to a joint criminal enterprise.'"); *United States v. Hegwood*, 977 F.2d 492, 497 (9th Cir. 1992) ("An agreement may be proven by circumstantial evidence that the defendants acted together with a common goal.   Express agreement is not required; rather, agreement may be inferred from conduct.").[3]

Here, the evidence clearly showed that the defendants engaged in "concerted action" to deny the delivery and receipt of reproductive health care – the defendants' actions at the Clinic on

---

[3]     While it is true that "mere presence" alone is insufficient to prove membership in a conspiracy, *e.g., Urquidi*, 71 F.4th at 375, it is sufficient when combined with evidence of concerted effort:

> We agree [that] "a defendant's presence at the crime scene . . . is not sufficient in and of itself to support an inference of participation in the conspiracy."   But presence still remains "a material and probative factor which the jury may consider."   And "where the government presents evidence tending to show that the defendant was present at a crime scene under circumstances that logically support an inference of association with the criminal venture, a reasonable juror could conclude the defendant was a knowing and intentional criminal conspirator."

*United States v. Xiang*, 12 F.4th 1176, 1185 (10th Cir. 2021) (citations omitted).   This is particularly so here, as each defendant's presence at scene of the crime – in front of and near Clinic entrances – supported the conspirators' concerted effort to block ingress and egress by patients and providers alike, thereby denying access to reproductive health care.

October 22, 2020, were digitally recorded.[4]   Among other things, the recordings depict the following:   (1) the defendants and other coconspirators working together to force entry into the Clinic (GX 1001); (2) shortly after forcing entry, the defendants and other coconspirators conferring and organizing themselves to blockade the Clinic (*id.*); (3) Hinshaw and three coconspirators binding themselves together with ropes and chains to block entry to the Clinic's treatment area (*id.*); (4) Goodman and Idoni combining to block the Clinic's staff entrance (GX 1024, Trans. 8/21/23 a.m. at 12, 62); (5) Geraghty, Goodman, and other coconspirators working together to block Shampy Holler, a Clinic patient, from accessing the Clinic (GX 1079B); and (6) Handy declaring that she and others were working together to blockade the Clinic (GX 1009).

These recordings depicting the defendants' concerted efforts to blockade access to the Clinic – alone – are sufficient to establish the conspiracy as charged in Count One.   As the D.C. Circuit has explained:

> Thus, while proof of conspiracy requires proof of an agreement, the jury may infer this agreement from the defendant's knowing participation in a [criminal enterprise] organized along division of labor principles—in which *his own role necessarily depends on the cooperation of other parties* to that network: "The existence of such a vertically integrated, loose-knit combination may raise the inference that each conspirator has agreed with the others (some whose specific identity may be unknown) to further a common unlawful objective . . . .

*United States v. Childress*, 58 F.3d 693, 710 (D.C. Cir. 1995) (emphasis added) (citation omitted); *see also United States v. Sherman*, No. 22-2044, 2023 WL 5600295, at *3, n.3 (8th Cir. Aug. 30, 2023) ("a 'conspiracy may be proven through circumstantial evidence and by inferences based on the actions of the parties.'"); *United States v. Wheeler*, 16 F.4th 805, 823 (11th Cir. 2021) ("One

---

[4]   At trial, recordings from the following sources was admitted:   (1) the Clinic's surveillance security system (reception area and hallway) (Government Exhibits ("GX") 1001, 1004, 1008, 1079A, and 1079B); (2) MPD Office Whyte's body worn camera (GXs 1009-10 and 1012-16); and (3) coconspirator Jonathan Darnel's livestream video.   (GXs 1017-19, 2022-24, and 2026).

way for the government to show that a defendant knew about and joined the charged conspiracy is 'through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy.'").   While the recordings depicting the defendants' concerted efforts to block access to the Clinic, alone, would be sufficient to prove the conspiracy, there is more.

For example, Handy, Geraghty, and Darnel discussed the purpose of and planned the conspiracy in a series of electronic communications.[5]   Among those electronic communications were references to the inclusion of and the roles of Goodman, Idoni, and other coconspirators.[6] Next, a number of the conspirators met the night before they invaded the Clinic to plan their criminal actions.[7]   Significantly, at that meeting the conspiratorial plan was articulated this way:

> *The plan was to meet at a specific location near the clinic. And then there would be last-minute go-throughs, reminders of what the plan was, before [Handy] went towards the abortion clinic and the rescuers kind of followed suit waiting for the door to open and everybody to take their position.*

Trans. 8/17/23 a.m., at 38 (emphasis added).   (Notably, the next day, the conspirators executed this very plan.)

---

[5]     *See, e.g.*, (1) Darnel's message regarding logistics of virtual meeting to plan a "rescue" (GX 5083, at 248); (2) Handy's message regarding "getting Air BnB for Herb [Geraghty]" (GX 5091 at 281); and (3) series of text messages between Geraghty to Handy in October 2020, regarding plans for a "rescue" (GX 4001A).   (Coconspirator Caroline Davis explained that "rescue" is a code word meaning to physically block access to an abortion clinic.   Trans. 8/16/23 p.m., at 59-60.)

[6]     *See, e.g.*, (1) Handy's Facebook post, referencing "Will" [Goodman] risking arrest at planned blockade (GX 5083, at 3037) and (2) reference to "Heather [Idoni] recruiting people to blockade" (*id.*).

[7]     *See, e.g.*, (1) Darnell's message to Handy regarding location for meeting on evening of October 21, 2020 (GX 5083 at 259); (2) Idoni's testimony that blockading the clinic was discussed at this meeting (Trans. 8/22/23 p.m. at 38, 42, 45); and (3) Davis testified that Handy discussed conducting a "rescue" at the meeting. (Trans. 8/16/23 p.m., at 83, 86).

On the morning of October 22, 2020, conspirators, including Handy, Hinshaw, Geraghty, and Idoni, met and then posed for a group photograph moments before they stormed the Clinic. (GX 3005; Trans. 8/16/23 p.m., at 75)    Geraghty, Idoni, Goodman, and Hinshaw hid in the stairwell, while Handy, using the fake appointment she had previously made, attempted to enter the Clinic.    Trans. 8/16/23 a.m., at 114; Trans. 8/23/23 a.m., at 39-40.    Goodman brought to the Clinic the chains that his coconspirators used to bind themselves together, when they blocked the entrance to the Clinic's treatment area.    Trans. 8/23/23 a.m., at 56-60; Trans. 8/16/23 p.m., at 91 (Davis saw bag of chains the morning of the blockade).    And both Handy and Darnel stated in real time that they and their coconspirators were engaged in blockading the Clinic.    GXs 1009, 1017.

While arguably less than that of the other defendants, the evidence of Hinshaw's membership in the conspiracy is more than sufficient.    "In practice, that standard sets a relatively low bar for the government.    [A defendant's] agreement to join the conspiracy need not be 'recorded or even express'; it can be inferred from his conduct."    *United States v. Mosley*, 53 F.4th 947, 957 (6th Cir. 2022).    Additionally, Hinshaw is guilty even if he joined the conspiracy after its formation and played only a minor role.    *See, e.g., United States v. Stewart*, 104 F.3d 1377, 1382 (D.C. Cir. 1997); *see also United States v. Jett*, 908 F.3d 252, 273 (7th Cir. 2018) ("That a defendant joins the conspiracy well after its inception is no matter."); *United States v. Torres*, 532

F. App'x 867, 870 (11th Cir. 2013) ("'A defendant may be convicted of conspiracy if he joined

the conspiracy after its inception and played only a minor role within it . . . .'").[8]

## V.    There is more than sufficient evidence to sustain the jury's verdict on Count Two.

The defendants were also convicted of Count Two of the indictment, in which they were

charged with Obstructing Access to a Reproductive Health Clinic, in violation of 18 U.S.C. § 248

(a) & (b).   That offense comprises three elements:   (1) the defendant used force or physical

obstruction; (2) the defendant intentionally injured, intimidated, or interfered with Ashley Jones

or the employees of the clinic; and (3) the defendant did so because Ms. Jones was obtaining or

the clinic was providing, reproductive health services.   FINAL JURY INSTRUCTIONS, ECF # 445, at

39.   The defendants claim that the evidence with respect to this count was insufficient in three

respects:   (1) intent, (2) the use of force, and (3) physical obstruction.   The evidence, however,

was sufficient with respect to all three.

First, the defendants claim that there was insufficient evidence to establish that they acted

"because Ms. Jones was obtaining or the clinic was providing, reproductive health services."

Instead, the defendants claim that they acted because the Clinic was performing infanticide.

Handy Mot. at 11.   This is the same fallacious claim made by Handy at trial.   Trans. 8/22/23 a.m.,

at 93-97.   But it is undermined by her own words and the words of her coconspirators uttered

---

[8]       The defendant's claim that the jury's verdict was influenced by a stray comment the Court
made regarding the existence of a conspiracy is baseless.   Handy Mot. at 6-7.   Not only was this
a stray, innocuous comment, but the Court subsequently instructed the jury as follows:   "I have
already found that there was [a conspiracy], and it's sufficient for the coconspirators *only in the
context of admitting the statements.   The jury will make their own decision about whether there
is a conspiracy*."   Trans. 8/22/23 p.m., at 125 (emphasis added).   Juries are assumed to follow
the Court's instructions.   *See, e.g.*, *United States v. Clarke*, 24 F.3d 257, 270 (D.C. Cir. 1994).

during the conspiracy.[9]   Thus, it is not surprising that the jury discredited Handy's *post hoc*, self-serving statements.   FINAL JURY INSTRUCTIONS, ECF # 445, at 17-18 ("You may also consider any inconsistencies between the witness's testimony and any other evidence that you credit. . . . You may consider whether the witness has been contradicted or supported by other evidence that you credit.").   The jury was well within its province to view Handy's claims with a jaundiced eye because not only were they inconsistent with other evidence but also because Handy had a motive to fabricate.   *Id.* at 27 ("In evaluating [Handy's] testimony, however, you may consider the fact that [s]he has an interest in the outcome of this trial."); *see also Portuondo v. Agard*, 529 U.S. 61, 70–71 (2000) (approving instruction that "'[t]he deep personal interest which [the defendant] may have in the result of the suit should be considered . . . in weighing his evidence and in determining how far or to what extent, if at all, it is worthy of credit.'").   Moreover, even if the jury credited Handy's claim that she acted based on her belief that the Clinic was committing infanticide, they could have concluded that she was also motived by her oft-stated desire to block access to reproductive health care.   FINAL JURY INSTRUCTIONS, ECF # 445, at 40 (emphasis added) ("So long as Ashley Jones's status as a reproductive health services patient, or the Washington Surgi-Clinic's employees' roles as reproductive health services providers *was one cause of the defendant's conduct*, that is enough to satisfy the third element."); *see, e.g., Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020) ("'Often, events have multiple but-for causes.'").

---

[9]        *See, e.g.*, (1) Handy's 10/22/20 Facebook post showing sign outside Clinic reading "prevent our *preborn* siblings from being kill [sic]!" (GX 3004 (emphasis added)); (2) Darnel's Facebook post calling on "antiabortion laborers" to participate in 10/22/20 incident (GX 5066 at 2744); and (3) Geraghty describing the blockade as an effort to stop "egregious violence against *the unborn* (GX 4001A (emphasis added)).

Second, the defendants claim that there was insufficient evidence that they used force. This claim too is unfounded.   "[T]he term 'force' means power and/or violence exerted upon or against a person or property."   FINAL JURY INSTRUCTIONS, ECF # 445, at 39.   The evidence demonstrated that each defendant used force when they entered the Clinic against the staff's wishes.   Trans. 8/16/23 a.m., at 123 (emphasis added) ("They were pushing, shoving, trying to wedge the door open, *shoving themselves through me*, through the other employee."); *id*. at 124-25 (emphasis added) ("It was a lot of aggression, stubbornness, entitlement to be there.   So it was very hard to remove them out. *So it was just a lot of aggression that we were met with at that time*.").[10]   Geraghty, himself, acknowledged this:

> Q.   Take a look at that circle that's still on the screen.   That looks like a whole bunch of people *trying to force their way into a clinic* where they're not welcome; right?
>
> A.   Yes.

Trans. 8/23/23 a.m. at 75 (emphasis added); *see also id*. at 62, 67; GX 1001.   Additionally, as set forth below, since a coconspirator forcefully injured a Clinic staffer's ankle, the defendants are liable for that use of force either as coconspirators or aiders and abettors.

Third, the defendants claim that there was insufficient evidence that they physically obstructed access to the Clinic.   Again, their claim is baseless.   "The term 'physical obstruction' means rendering impassable an entrance to or an exit from a facility that provides reproductive health services, or rendering passage to or from such a facility unreasonably difficult or

---

[10]   Defendants' argument that they used force "only because the clinic employees tried to block Defendants' entry into the facility" (Handy Mot. at 10) is absurd.   This offensive attempt to blame the victims should not be countenanced by the Court.   It is akin to a defendant claiming that he committed theft – not robbery – because he only used force in response to a victim's refusal to surrender her belongings.

hazardous." FINAL JURY INSTRUCTIONS, ECF # 445, at 39; *see also United States v. Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001) (physical obstruction is satisfied when defendants "actions compelled patients to enter the clinic through the crowded and chaotic rear entrance"). The evidence was more than sufficient to establish that each defendant personally acted to physically obstruct access to the Clinic: (1) Geraghty hovered over Mrs. Holler, as she collapsed on the floor in agony, thus preventing the Clinic from providing her with reproductive health care (GX 1079B); (2) Goodman and Idoni blocked access to the Clinic's staff entrance (GXs 2015, 1011, 1023; Trans. 8/22/23 p.m., at 60 (Idoni: "I stood in front of [Clinic staff entrance"), Trans. 8/23/23 a.m., at 37 (Geraghty acknowledged that Idoni blocked the staff entrance), Trans. 8/17/23 a.m., at 46-48; (Idoni and a male blocked door outside the clinic) Trans. 8/16/23 a.m., at 78-79 (patient blocked from staff entrance); (3) Handy placed a chair in the Clinic's doorway and anchored it with rope (GX 1001); and (4) Hinshaw bound himself to coconspirators with rope to block the entrance to the Clinic's treatment area (GX 2015, 1001, 1011; Trans. 8/23/23 a.m., at 38 (Geraghty acknowledge Hinshaw sitting in front of door)). In fact, Handy admitted to Off. Whyte that she and her coconspirators were trying to block patients' access to the Clinic. (GX 1009). All of this resulted in Clinic patient Ashley Jones having to climb through the receptionist's window to access her reproductive health care. GX 1004; Trans. 8/16/23 a.m., at 79, 138.

In addition to personally violating the FACE Act, the defendants also vicariously violated it in two ways: (1) coconspirator or "Pinkerton" liability and (2) aiding and abetting liability. First, "a conspirator can be found guilty of a substantive offense based upon acts of his coconspirator so long as the act was done in furtherance of the conspiracy, was within the scope of the unlawful project, and could be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *United States v. Sampol*, 636 F.2d 621, 676 (D.C. Cir. 1980) (*per*

*curiam*) (citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)); *see also United States v. Khatallah*, 41 F.4th 608, 625–26 (D.C. Cir. 2022) (same); *United States v. Ballestas*, 795 F.3d 138, 146 (D.C. Cir. 2015) (citation omitted) ("'As long as a substantive offense was done in furtherance of the conspiracy, and was reasonably foreseeable as a 'necessary or natural consequence of the unlawful agreement,' then a conspirator will be held vicariously liable for the offense committed by his or her coconspirators.'"); *see also* FINAL JURY INSTRUCTIONS, ECF # 445, at 44.[11]   Here, a coconspirator (Jay Smith[12]) violated FACE by using force against both a Clinic employee and Clinic property, which resulted in an injury to the employee.   His violation was committed during the course of the conspiracy; and, inasmuch as the defendants conspired to block access to reproductive health care, Smith's use of force to gain entry into the Clinic to facilitate the planned blockade was reasonably foreseeable as a "'necessary or natural consequence of the unlawful agreement.'"

Second, the defendants are guilty of Count Two as aiders and abettors.   A defendant may be found guilty as an aider and abettor if the following four elements are established:   (1) someone committed the FACE Act violation charged in Count Two; (2) the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the offense charged in Count Two; (3) the defendant acted with the intent to facilitate the offense charged in Count Two; and (4) the defendant acted before the offense charged in Count Two was completed. FINAL JURY INSTRUCTIONS, ECF # 445, at 42.   Again, Smith (at least) used force to enter the Clinic

---

[11]   Defendants' "suggest[ion]" that the aiding and abetting standard "should also apply to co-conspirator liability" (Handy Mot. at 11), must be rejected, as it is inconsistent with blackletter law.

[12]   *See* Trans. 8/17/23 p.m., at 42; GX 2015 at 2 (still photograph from Clinic surveillance recording identified as Jay Smith).

with the intent to interfere with access to reproductive health care; and, based on their conduct described above, each defendant aided Smith's commission of the offense, with the requisite intent and before the offense was completed.

## VI.   The Court should only consider the defendants' arguments regarding the sufficiency of the evidence.

The defendants also raise a number of issues that are not properly addressed in a motion for judgment of acquittal.   "There is only one ground for a motion for a judgment of acquittal. This is that 'the evidence is insufficient to sustain a conviction' of one or more of the offenses charged in the indictment or information."   2A FED. PRAC. & PROC. CRIM. § 466 (4th ed.); *see also United States v. Avery*, 205 F. App'x 819, 825 (11th Cir. 2006) (when ruling on a Rule 29 motion, court rejected defendant's attempt to raise issues previously addressed in Rule 12 motion to dismiss); *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994) ("The proper basis for a Rule 29(a) motion for judgment of acquittal is a claim of insufficient evidence in light of the elements of the offense charged.").

Accordingly, defendants' motions for judgment of acquittal are not the proper vehicle to raise arguments beyond the sufficiency of the evidence.   The Court, therefore, should not consider such arguments at this juncture.   In any event, each of their extraneous arguments is meritless. First, Idoni's challenges to charging decisions (Idoni Mot. at 2) and her request for a defense of others jury instruction (*id.* at 4) were already resolved by the Court (ECF #s 299, 369, 353). Second, defendants' argument that the jury was wrongly instructed regarding the meaning of "oppress" and "intimidate" (Handy Mot. at 3-5; Idoni Mot. at 3) is incorrect.   *See* Mem Op. ECF # 444.

VII.    **Conclusion**

Inasmuch as the evidence of the defendants' guilt for both counts was overwhelming, the Court must conclude that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"   *Sitzmann*, 893 F.3d at 821.   The defendants motions for judgment of acquittal should, therefore, be denied.


                          Respectfully submitted,

                          KRISTEN CLARKE
                          ASSISTANT ATTORNEY GENERAL
                          CIVIL RIGHTS DIVISION
                          */s/ Sanjay H. Patel*
                          SANJAY H. PATEL
                          IL Bar. No. 6272840
                          Trial Attorney
                          Criminal Section, Civil Rights Division
                          Email: Sanjay.Patel@usdoj.gov

                          MATTHEW M. GRAVES
                          UNITED STATES ATTORNEY
                          D.C. Bar No. 481052
                          */s/ John Crabb Jr.*
                          JOHN CRABB JR.
                          NY Bar No. 2367670
                          REBECCA G. ROSS
                          NY Bar No. 5590666
                          Assistant United States Attorneys
                          601 D Street, NW
                          Washington, DC 20001
                          john.d.crabb@usdoj.gov